J-A26043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAYLE RAY MEALY | : | |
| | : | |
| Appellant | : | No. 1098 WDA 2024 |

Appeal from the Judgment of Sentence Entered June 7, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001287-2022

BEFORE:  OLSON, J., STABILE, J., and KING, J.

DISSENTING MEMORANDUM BY KING, J.:          **FILED:  February 3, 2026**

I respectfully depart from the Majority's conclusion that the Commonwealth failed to prove Appellant's specific intent to kill.  As such, I would affirm the judgment of sentence.

While the Majority correctly sets forth the relevant facts, I believe that the majority fails to view this evidence in the light most favorable to the Commonwealth as verdict winner.  Here, the record demonstrates Appellant's awareness that her actions would imperil Child.  We reiterate that Detective Styn recovered multiple Facebook Messenger chats between Appellant and her mother.  In these exchanges, Appellant's mother pleaded with Appellant, imploring her not to leave Child in his crib, unmonitored, for hours at a time.  Rather than accepting this well-meaning advice, Appellant complained: "I literally have no space, no time to myself or anything."  (N.T. Trial, 2/14/24,

at 19).

Appellant then pivoted to planning a vacation with friends. On January 19, 2021, Appellant asked her mother to watch Child during the upcoming trip. Appellant's mother commented, "[T]hat's a pretty long vacation plan for a single mother wanting people to watch their kid." (*Id.* at 21). Appellant, showing little concern for her starving son, replied: "I guess I can't have a week to myself or just vacation." (*Id.*)

Against this backdrop, Appellant also opted to spend more time in a "virtual" relationship with the individual identified as Kyle Pinkston. The Majority correctly notes an increased volume of Snapchat messages between Appellant and the Pinkston account during the early morning hours of January 20, 2021. I believe that the jury correctly relied upon this evidence as proof that Appellant made a conscious decision to ignore Child's needs in favor of "sexting" with someone over the Internet.

Based upon the foregoing, the evidence supported the jury's conclusions that Appellant was responsible for killing Child, and Appellant acted with specific intent. Appellant ignored the obvious physical signs of Child's failing health, as described in detail by Dr. Vey. Appellant also disregarded her own mother's warnings about the amount of care that Child required. Appellant's decisions to prioritize vacation planning, video games, social media, and telephone conversations over the health of Child revealed the deliberation

required to support a first-degree murder conviction.[1]  Thus, I would hold that

the Commonwealth presented sufficient evidence to support Appellant's first-

degree murder conviction.  Accordingly, I dissent.

---

[1] I acknowledge the Majority's analysis of **Commonwealth v. Tharp**, 574 Pa. 202, 830 A.2d 519 (2003), *cert. denied*, 541 U.S. 1045, 124 S.Ct. 2161, 158 L.Ed.2d 736 (2004), and I agree that the case is distinguishable in some regards.  Most significantly, the defendant in **Tharp** starved the victim over the course of several years.  Our Supreme Court noted, "the very length of time needed to bring about [the victim's] death by starvation suggests a unique type of coldness and deliberation[.]"  **Id.** at 217, 830 A.2d at 527.  Nevertheless, our Supreme Court also explained that the defendant's specific intent to kill was established by her "deliberate mistreatment of her daughter despite **obvious physical indications** that [the victim] was dangerously malnourished[.]"  **Id.** at 216, 830 A.2d at 527 (emphasis added).

Here, I think it does not matter that Child's death occurred over a few weeks, as opposed to the longer period at issue in **Tharp**.  According to her statement to the police, Appellant checked on Child in his crib on January 19, 2021, shortly before his death.  (**See** Affidavit of Probable Cause, dated 3/11/22, at 1).  Assuming this statement is true, she interacted with Child as his condition worsened.  I believe Appellant's subsequent inaction in the face of Child's obvious deterioration amounted to sufficient proof of her intent to kill.